Thomas GREENAN, Plaintiff,

v.

**ROMEO VILLAGE POLICE DEPARTMENT, Anthony Chalut, individually and in his official capacity, Daniel Sokolnicki, individually and in his official capacity, William Hackel, individually and in his official capacity, and Macomb County Sheriff Department, Defendants.**

No. 92–73153.

United States District Court, E.D. Michigan, S.D.

April 12, 1993.

John Maksym, Detroit, MI, for plaintiff.

John Hoffman, John W. Martin, Jr., Detroit, MI, for defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND IN THE ALTERNATIVE, MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MACOMB COUNTY S.D. AND HACKEL'S MOTION FOR SANCTIONS**

GADOLA, District Judge.

Plaintiff commenced this action June 5, 1992. This court entered an order June 23, 1992, dismissing Counts III and IV of plaintiff's complaint because those counts implicated only state law. On June 15, 1992, defendants William Hackel and Macomb County Sheriff Department ("Macomb County S.D.") filed an answer. Defendants Romeo Village Police Department ("Romeo P.D."), Anthony Chalut and Daniel Sokolnicki answered the complaint August 13, 1992. Discovery closed March 1, 1993.

On December 15, 1992, defendants Romeo P.D., Anthony Chalut and Daniel Sokolnicki filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and in the alternative, motion for summary judgment. Plaintiff filed an untimely answer January 22, 1993. Defendants filed a reply January 27, 1993. On February 18, 1993, defendants Macomb County S.D. and William Hackel filed a motion to dismiss and, in the alternative, motion for summary judgment, and motion for sanctions. Plaintiff filed no response to that motion.

On March 10, 1993, following the close of discovery, plaintiff filed a supplemental response and three depositions.

### I. Facts

On February 8, 1992, plaintiff Thomas Greenan was attending a party at 11971 Springbrook Court in the Springbrook trailer park in Macomb County between 32nd and 33rd off Van Dyke. See Exs. A and B to Defendant's Brief. At oral argument on this motion, defendants admitted that this address is located approximately two (2) miles outside the jurisdictional limits of the Romeo Village Police.

In the early morning hours of February 9, 1992, Michelle Burns called the Michigan State Police to complain that she had been raped by plaintiff at the Springbrook Court address. The Michigan state police operator who answered the call instructed Ms. Burns to go to the Romeo P.D. to make out a complaint. Ms. Burns, accompanied by friends, went to the Romeo P.D. and filed a complaint alleging that she had been raped. From the offices of the Romeo P.D., Ms. Burns telephoned the Macomb County S.D. and was told that an officer from that office would be sent to speak with her.

Believing that a felony had been committed by plaintiff, Romeo Village police officers Anthony Chalut and Daniel Sokolnicki went to the Springbrook Court address to arrest plaintiff. According to defendants, Chalut went to the front door of the trailer located at 11971 Springbrook Court, while Sokolnicki went to the back door. As Chalut knocked at the front door, a white male threw open the rear door and attempted to flee the trailer. Sokolnicki identified himself as an officer and ordered the individual back into the

trailer. Sokolnicki then entered the trailer through the rear door. Chalut entered through the front door. There were four white males in the outer room of the trailer; Chalut asked which one of them was Thomas Greenan. After a lengthy pause, plaintiff identified himself; Sokolnicki pointed out that it had been plaintiff who had attempted to flee out the back door when the officers arrived.

Chalut and Sokolnicki informed plaintiff that he was under arrest. As the officers attempted to handcuff plaintiff, defendants allege that plaintiff struggled with them. Once plaintiff was handcuffed and as he was led from the trailer, Sokolnicki informed plaintiff of his constitutional rights.

Defendants claim that even after he was handcuffed and placed in defendants' patrol car, plaintiff continued to yell and thrash about such that plaintiff had to be subdued by defendant Sokolnicki, who was seated in the back of the car with plaintiff. Plaintiff's cousin rode in the front of the car with defendant Chalut. Plaintiff alleges that, during the ride to the Romeo P.D., defendant Sokolnicki elbowed plaintiff in his mouth, causing a contusion to his lip. After plaintiff, plaintiff's cousin, and defendants Chalut and Sokolnicki arrived at the Romeo P.D., plaintiff was left to wait in the patrol for approximately an hour until officers from the Macomb County S.D. arrived to take him into custody.

## II. The Pleadings

As stated, *supra*, Counts III and IV were dismissed by the court because the allegations contained therein implicated only state law issues. Therefore, only Counts I and II of the complaint remain at issue.

### A. Defendants' Motions

Defendants Romeo P.D., Anthony Chalut and Daniel Sokolnicki move to dismiss Counts I and II of plaintiff's complaint pursuant to Fed.R.Civ.Pro. 12(b)(1), failure to state a claim over which the court has jurisdiction, and to Fed.R.Civ.Pro. 12(b)(6), for failure to state a claim upon which relief can be granted. These defendants' also move, in the alternative, for summary judgment as to

Counts I and II. The other defendants, Macomb County Sheriff's Department and Macomb County Sheriff William Hackel filed a separate motion to dismiss and, in the alternative, motion for summary judgment, and motion for sanctions on February 18, 1993. Defendant William Hackel also filed an affidavit December 18, 1992, stating that he has no personal knowledge as to and had no personal involvement in the arrest and subsequent detainment of plaintiff in the Macomb County jail.

The parties do not brief, or even discuss, the first issue of whether the court has jurisdiction over plaintiff's claims. Because plaintiff alleges that defendants violated his rights under the United States Constitution and under 42 U.S.C. § 1983, the court finds that it clearly has jurisdiction over the subject matter of the issues raised in Counts I and II of plaintiff's complaint.

### B. Plaintiff's Complaint

In Count I of his complaint, plaintiff alleges that defendants William Hackel and Macomb County S.D. violated his rights under the United States Constitution and his civil rights under 42 U.S.C. § 1983 by illegal seizure of his person, by use of excessive force and by depriving him of his liberty without due process of law. Plaintiff claims that as a result of defendants' actions, plaintiff experienced pain and suffering from injuries to his head, loss of liberty without justification, and humiliation and embarrassment resulting from his loss of liberty. Nowhere in Count I are defendants William Hackel and Macomb County S.D. accused of taking any actions whatsoever.

In paragraphs 21 and 22 of Count I, plaintiff alleges that defendant *Romeo P.D.* is vicariously liable for the actions of the officers because it knew or should have known of the vicious propensities of the officers, and that defendant *Romeo P.D.* is liable for negligence because it failed to adequately train, supervise and discipline the individual officers. These paragraphs do not allege any wrongdoing on the part of defendant Macomb County S.D. or on the part of defendant William Hackel, nor does any of the language of Count I establish any link be-

tween the conduct of the Romeo P.D. and the two defendants charged in Count I with constitutional violations.

In Count II of his complaint, plaintiff alleges that defendants Romeo P.D. and police officers Anthony Chalut and Daniel Sokolnicki violated his rights under the United States Constitution and under 42 U.S.C. § 1983 by stopping, searching, seizing, detaining, arresting and falsely imprisoning plaintiff without a warrant, without probable cause and in the absence of exigent circumstances. Plaintiff further alleges that defendants deprived him of his right to be free from an illegal search and seizure of his person and free from excessive use of force and loss of liberty without due process of law, by acting "in an unlawful, malicious and willful manner without authorization of law, and absent jurisdictional authority but under color of title...." Plaintiff's Complaint at 6. Plaintiff claims that as a result of defendants' actions he experienced pain and suffering in the form of injuries to his head, loss of his liberty without justification, and humiliation and embarrassment resulting from the deprivation of his liberty and freedom.

Plaintiff goes on to allege that defendant Romeo P.D. is vicariously liable because it knew or should have known of the vicious propensities of the officers, including their propensity to violate the civil rights of Michigan citizens. Plaintiff further alleges that the Romeo P.D. is directly liable because it was negligent in failing to adequately train, supervise and discipline the individual officers and that such negligence directly or proximately caused plaintiff's injuries.

### III. Analysis

**1. Standard of Review for Motion for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would

have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### a. Count II: Plaintiff's Claim of Unlawful Arrest

■ In Count II of his complaint, plaintiff claims that defendants Chalut and Sokolnicki were outside the jurisdictional limits of Romeo Village when they effected his arrest and that the arrest therefore was illegal. Plaintiff was arrested pursuant to a female citizen's complaint that she had been raped by plaintiff. The woman initially telephoned the Michigan State Police with her complaint. Following the instructions of the Michigan State Police, the woman went to the offices of the Romeo P.D. to file a complaint against plaintiff Greenan. When she arrived at the Romeo P.D., the Romeo P.D. called the Macomb County S.D., which dispatched officers to come interview the woman for the filing of a formal complaint. While she waited for representatives of the Macomb County Sheriff's Department to arrive at the offices of the Romeo P.D., Officers Chalut and Sokolnicki

went to the scene of the alleged rape to arrest plaintiff; at this point, these officers clearly had probable cause to arrest plaintiff for the felony offense of rape.[1]

Plaintiff claims that because the Romeo police officers were not technically within the boundaries of Romeo Village that the officers were outside their jurisdiction to arrest, and that therefore the arrest was illegal. It is this alleged illegality that serves as the primary basis for plaintiff's claims that he was illegally seized and detained in violation of his rights under the Fourth Amendment to the Constitution and his civil rights under 42 U.S.C. § 1983.

■ The primary issue of whether the arrest was legal is a matter of Michigan state law. In *People v. Bashans,* 80 Mich.App. 702, 712–13, 265 N.W.2d 170 (1978), the Michigan Court of Appeals held that any citizen, including a police officer acting outside of his jurisdiction, may make an arrest for a felony even though the person to be arrested has not committed the felony in the presence of the citizen seeking to make the arrest. This caselaw cites to and accurately represents Michigan statutory law. *See* Mich.Com.Laws Ann. 764.16 (1979). The formal complaint of a citizen claiming she had been raped by plaintiff certainly was sufficient to form a reasonable belief on the part of defendants that plaintiff had committed a felony.[2]

Furthermore, the Michigan Home–Rule Cities Act provides that police officers have authority to arrest outside their jurisdictional limits if they are acting in conjunction with officers regularly employed to enforce the laws of that jurisdiction. *Delude v. Raasakka,* 42 Mich.App. 665, 669–70, 202 N.W.2d 508 (1972). The woman who complained of being raped by plaintiff had been instructed

---

**1.** An arrest without a warrant may validly be made provided that the arrest is supported by probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975). Probable cause which will justify an arrest without a warrant exists where the facts and circumstances are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed by the person to be arrested. *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979). Proba-

ble cause for an arrest without a warrant may be established by, *inter alia,* information received from the victim of a crime and from other persons present in the area where the crime was committed. *Chambers v. Maroney,* 399 U.S. 42, 46, 90 S.Ct. 1975, 1978–79, 26 L.Ed.2d 419 (1970), *reh'g denied* 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94.

**2.** Also see footnote 1.

by the Michigan State Police to report her complaint to the Romeo P.D. When she arrived at the offices of the Romeo P.D., the Romeo P.D. contacted the Macomb County S.D. which ultimately took the formal complaint and took plaintiff Greenan into custody following his arrest by the Romeo officers. From these facts, the court finds that defendants Chalut and Sokolnicki clearly were acting in conjunction with the Michigan State Police and with the Macomb County S.D. in effectuating the arrest of plaintiff Greenan. Therefore, for the foregoing reasons, the court finds that plaintiff's arrest was lawfully made.

### b. Count II: Defendant Sokolnicki

The court will now address only that part of Count II directed at defendant Sokolnicki's actions while seated next to plaintiff in the rear of the patrol car.

 Plaintiff claims that defendant Sokolnicki violated plaintiff's constitutional and civil rights by using excessive force against plaintiff. Assuming defendant Sokolnicki did strike plaintiff in the head with his elbow, defendants claim that Sokolnicki is protected from liability for such tortious conduct by the qualified immunity doctrine because such conduct occurred in the line of duty and was reasonable in light of the circumstances. Under the qualified immunity rule, government officials are immune from personal liability for their allegedly unlawful actions unless the law clearly proscribes the actions they took. *Anderson v. Creighton,* 483 U.S. 635, 638–44, 107 S.Ct. 3034, 3038–41, 97 L.Ed.2d 523 (1987).

Plaintiff claims that his rights were violated by the use of excessive force allegedly employed by Officer Sokolnicki while plaintiff and officer Sokolnicki were seated in the back of the Romeo P.D. patrol car. Defendants allege in their brief, through the submission of police records signed by defendants Sokolnicki, that plaintiff had to be subdued both in the initial handcuffing stage and afterwards both outside and inside the patrol car.

Defendants further allege that upon the officers arrival at the trailer where the crime allegedly took place, plaintiff tried to flee the scene by attempting to exit the rear door of the trailer; plaintiff was prevented from doing so by the presence at that door of Officer Sokolnicki. Neither in his response to this motion nor in his complaint, does plaintiff directly refute these factual allegations. Furthermore, in support of their allegations, defendants attach a statement purportedly written and signed by plaintiff wherein plaintiff admits that he attempted to exit the rear door of the trailer.

 In a case alleging a deprivation of rights under 42 U.S.C. § 1983 during an arrest, a plaintiff, to survive a motion for summary judgment, must designate specific facts demonstrating that the accused officer acted unreasonably in using the level of force at issue. *Smith v. Freland,* 954 F.2d 343, 345 (6th Cir.1992). Whether an officer's actions are reasonable depends upon whether he or she had probable cause to believe that the suspect posed a threat of serious physical harm, either to the officer or to others and whether, in light of that threat, the use of force was reasonable. See *Id.* (where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force).

In the case at hand, defendant Sokolnicki had reason to believe that plaintiff was a dangerous felon who was resisting arrest. Plaintiff offers no evidence to refute defendants' claims that plaintiff was resisting arrest, first by attempting to flee and second, by continuously thrashing about while in the custody of the officers.[3]

---

3. At page 13 of his supplemental response, plaintiff recites a portion of the deposition testimony of Jason Bernard, a witness to the arrest inside the trailer. Bernard states that at the moment of the arrest in the trailer, he did not see plaintiff resisting the officers. However, plaintiff does not argue this point in the response. In any event, this testimony does not contradict defendants' claim that plaintiff was thrashing about in the rear of the patrol car. In fact, plaintiff recounts the deposition testimony of defendant Sokolnicki himself wherein Sokolnicki recounts that plaintiff was bouncing around and thrashing back and forth; that Greenan was angry, yelling,

Assuming that Sokolnicki did hit plaintiff in the mouth with his elbow, the court finds that under the circumstances surrounding plaintiff's arrest, defendant Sokolnicki's use of force against plaintiff was not, as a matter of law, so unreasonable as to be violative of plaintiff's constitutional or civil rights. The qualified immunity rule shields government officials from personal liability for their allegedly unlawful actions unless the law clearly proscribes the actions they took, *Anderson,* 483 U.S. at 638–44, 107 S.Ct. at 3038–41. Therefore, the court finds that, under the qualified immunity rule, defendant Sokolnicki cannot be held liable for any of the injuries plaintiff allegedly incurred during his arrest.

## 2. Standard of Review for Motion to Dismiss

 Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or 12(c), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

### a. Count I: Claims Against Defendants Macomb County and Sheriff William Hackel

 Nowhere in plaintiff's complaint does plaintiff allege any facts which support a claim for relief against defendants Macomb County S.D. or Macomb County Sheriff William Hackel. Furthermore, plaintiff's response does not refute any of the factual allegations made in Hackel's affidavit. Neither Macomb County S.D. nor Sheriff Hackel had any involvement in the plaintiff's arrest. And there is no allegation that plaintiff was injured while in the custody of the Macomb County S.D. Therefore, Count I shall be dismissed for failure to state a claim upon which relief can be granted.

### b. Count I: Defendant Romeo P.D.

 Assuming plaintiff could prove that officers Chalut and Sokolnicki violated plaintiff's rights, plaintiff's claims against the Romeo P.D. would still fail. In his complaint, plaintiff alleges that Romeo P.D. should be vicariously liable under the principles of *respondeat superior* or because Romeo P.D. was negligent in its failure to "adequately train, supervise and discipline the *individual* officers . . . ." Complaint at 7 (emphasis added). *Respondeat superior* or vicarious liability will not attach to a municipality in an action under 42 U.S.C. § 1983. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989). Only where the municipality *itself* causes the constitutional violation at issue by its policies or customs, will the municipality be held liable. *Id.* (emphasis in original). Thus, plaintiff's *respondeat superior* claim against defendant Romeo P.D. fails to state a claim upon which relief can be granted.

 Plaintiff's negligence claim must be predicated upon some practice or policy of the Romeo P.D. Plaintiff does not allege that defendant Romeo P.D. had a *general* policy or practice of not training or supervising its officers. Rather, the complaint alleges that the Romeo P.D. was negligent in its failure to train, supervise and discipline these individual officers, that is, Officers Chalut and Sokolnicki. Thus, even assuming everything plaintiff states in his complaint is true, the court finds that with respect to defendant

---

smacking his head against the screen and against Sokolnicki's right side, and that Greenan bit Sokolnicki. Plaintiff does not argue that he was not

behaving in this manner; rather, he focuses his argument only on whether Sokolnicki hit him in the mouth with his elbow.

**666**

Romeo P.D., plaintiff has failed to state a claim upon which relief can be granted.

### c. Count II: Defendant Anthony Chalut

 In his complaint, plaintiff entitles Count II "Constitutional and Civil Rights Violations of Defendants Romeo P.D., Anthony Chalut and Daniel Sokolnicki." However, plaintiff fails to allege any factual allegations with respect to defendants Chalut or Sokolnicki. Apparently, an error was made in the preparation of plaintiff's complaint such that Count II of the complaint directed at defendants Chalut and Sokolnicki reads

> "... [d]efendants William Hackel and Macomb County Sheriff Department acted separately and in concert, in an unlawful, malicious and willful manner without authorization of law...."

Paragraph 25 of Complaint at 6. Nevertheless, the court will read the complaint as a whole and in a light most favorable to plaintiff, and assume that plaintiff's counsel meant to include here the factual allegations of paragraphs 8 through 16 of the complaint wherein plaintiff alleges that defendants Chalut and Sokolnicki broke down the rear door of the trailer owned by plaintiff's friend, threw plaintiff onto the counter, escorted plaintiff to their patrol car, and held plaintiff in the patrol car for over an hour. Plaintiff further alleges that one of these Romeo Village police officers "struck plaintiff in the head with his elbow, causing severe injuries." Complaint at 3–4.

Plaintiff's pleadings in the instant motion indicate that plaintiff's alleged injury took place while seated next to Officer Sokolnicki in the back of the patrol car. At that time, Officer Chalut was in the front of the vehicle with plaintiff's cousin who apparently accompanied plaintiff and the officers to the Romeo P.D. Because the court holds, *supra*, that plaintiff's arrest by defendants Chalut and Sokolnicki was lawful and because plaintiff makes no allegations that he was brutalized by defendant Chalut, the court finds that with respect to defendant Chalut, plaintiff has failed to state a claim upon which relief can be granted.

The court therefore finds that with respect to defendant Macomb County S.D., defendant William Hackel, defendant Romeo P.D., and defendant Anthony Chalut on the claim of excessive use of force, plaintiff has failed to state a claim upon which relief can be granted. The court further finds that with respect to defendant Daniel Sokolnicki, plaintiff has failed to allege facts which would create a genuine issue of fact as to whether defendant Sokolnicki violated plaintiff's constitutional or civil rights. Finally, the court finds that plaintiff has failed to demonstrate facts which would create a genuine issue of material fact as to whether defendants' arrest of plaintiff was unlawful and thus violative of plaintiff's constitutional or civil rights.

### ORDER

Therefore, it is hereby **ORDERED** that defendants Romeo P.D., Chalut and Sokolnicki's motion to dismiss is **GRANTED.**

It is further **ORDERED** that defendants Romeo P.D., Chalut and Sokolnicki's motion for summary judgment is hereby **GRANTED.**

It is further **ORDERED** that defendants Macomb County S.D. and William Hackel's motion to dismiss and, in the alternative, is hereby **GRANTED** as a motion to dismiss.

It is further **ORDERED** that defendants Macomb County S.D. and William Hackel's motion for sanctions is hereby **GRANTED.**

**SO ORDERED.**