**Terri L. MATASIC, et al., Plaintiffs,**

v.

**CITY OF CAMPBELL, OHIO, et al., Defendants.**

**No. 4:96CV208.**

United States District Court, N.D. Ohio.

Feb. 13, 1997.

---

Alan John Matavich, Youngstown, OH, Ted Chuparkoff, Akron, OH, for Terri L. Matasic.

Nick Tomino, Reminger & Reminger, Cleveland, OH, for John Yanno, John J. Costantino, Jr. and Emanuel Darkadakis.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. # 27). For the reasons set forth below, the Court finds Defendants' motion to be meritorious.

### BACKGROUND

Plaintiffs' filed this action pursuant to 42 U.S.C. § 1983. Named as defendants in the Amended Complaint were the City of Campbell, the Chief of Police and three individual officers. The Chief of Police and the three officers were sued in both their official and individual capacities. On October 16, 1996, the City of Campbell and the Chief of Police were dismissed pursuant to a Joint Stipulation of Dismissal (Dkt. # 28). Remaining as defendants were Campbell Police Officers, John Yanno ("Yanno"), John J. Constantino,

Jr. ("Constantino"), and Emanuel Darkadakis ("Darkadakis").

The following facts are undisputed. On the night of April 18, 1995, Plaintiff, Mark Matasic ("Matasic"), was drinking beer with some friends on the front porch of his home. Later that night, he took a friend's automobile for a drive. At the time, Matasic was fourteen years old.

At approximately 11:30 p.m., Constantino was traveling to the police station where he was to begin duty. He was in uniform and driving his own vehicle. En route, Constantino encountered a white vehicle, operated by Matasic, driving left of the center line causing another vehicle to run off the road. In response, Constantino phoned the station on his cellular phone and requested that a cruiser be dispatched to investigate a possible DUI. As Constantino phoned the dispatcher, the white vehicle backed into his vehicle and fled. Constantino proceeded to follow the white vehicle.

Dispatched in response to the call were Sergeant John Yanno ("Yanno") and Officer Emanuel Darkadakis ("Darkadakis"). Each was operating a marked police vehicle. In an attempt to stop the vehicle, Yanno and Darkadakis turned on the overhead flashing lights and sirens. However, Matasic failed to stop.

The pursuit continued until Matasic arrived at his home. Upon arriving at his residence, Matasic, proceeded to exit the vehicle. At this point, he was apprehended by the officers. It is the arrest which gives rise to the present action.

Matasic claims that as he exited the vehicle, he was punched and wrestled to the ground by Constantino. He also claims that while face down on the ground, either Constantino or Darkadakis placed a foot on his neck while he was being cuffed. Matasic was taken to the hospital where a one centimeter laceration and some abrasions were treated. Matasic alleges that such force was excessive.

As one may have expected, Defendants offer a conflicting account of the arrest. The officers state that Matasic exited the vehicle and attempted to flee on foot. Consequently, it was necessary for Constantino to wrestle Matasic to the ground. The officers contend the force used to arrest Matasic was reasonable.

## SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) governs summary judgment and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter or law ...

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the nonmoving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the nonmoving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the nonmoving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

### Qualified Immunity

■ Section 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Consti-

tution and federal law. 42 U.S.C. § 1983 (1979). However, when officials are sued in their individual capacities, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity. *See Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

■ "The first step in a qualified immunity analysis is whether, based on the applicable law, a constitutional violation occurred." *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 589 (6th Cir.), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994); *Silver v. Franklin Township,* 966 F.2d 1031, 1035 (6th Cir. 1992). In determining whether or not a right is clearly established, courts "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir.1994).

■ If the right was clearly established, the court must determine whether "the plaintiff has alleged facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights." *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994). Individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what she was doing violates those rights. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

### Excessive Force

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.' *Id.* at 395, 109 S.Ct. at 1871. In determining the reasonableness of the force used under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. at 1871. Courts are to be mindful that

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396–97, 109 S.Ct. at 1872.

Furthermore, the Sixth Circuit has noted that in accordance with *Graham*

> we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policeman face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992).

■ In the case at hand, Constantino observed Matasic force another car off the road, back into his car, and flee from officers Darkadakis and Yanno when they activated the overhead lights of their cruisers. Such actions caused Defendants to believe that Matasic was operating a stolen vehicle and attempting to flee. (Affidavits of Yanno at 2, Darkadakis at 2 and Constantino at 2). Plaintiffs do not dispute these facts, nor do

they dispute that Matasic was driving without a valid operators license as he was only fourteen years of age at the time. Plaintiffs also admit that Matasic had been drinking.

Assuming that Constantino did hit Matasic and that one of the officers placed their foot on his neck as he was being handcuffed, the Court finds that under the circumstances surrounding the arrest, such force was not so unreasonable as to be violative of his constitutional or civil rights. This Court agrees with the reasoning set forth in *Greenan v. Romeo Village Police Dept.,* 819 F.Supp. 658, 664–665 (E.D.Mich.1993) (finding that one elbow blow to the mouth of a suspect that attempted to flee and resist arrest was not so unreasonable as to constitute a violation of his constitutional or civil rights). As in *Greenan,* Defendants were faced with a potential felon who fled from the officers in an automobile and created a danger to others. Therefore, even assuming that Matasic was punched and taken to the ground, the Court nonetheless finds such force reasonable under the given circumstances.

## CONCLUSION

The Court finds that Plaintiffs have failed to allege facts which create a genuine issue as to whether the officers violated constitutional or civil rights. As such, the Court finds that Defendants are entitled to summary judgment. An appropriate Judgment will accompany this order.

**IT IS SO ORDERED.**