**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-2900

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARLEENE ELIZABETH BROWN,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

(January 11, 1994)

Before POLITZ, Chief Judge, GARWOOD, Circuit Judge, and PARKER[*],
District Judge.

POLITZ, Chief Judge:

Convicted of embezzling union funds and of making false entries in union records, Darleene Elizabeth Brown appeals. Concluding that the manner in which the testimonial privileges of Brown's husband and son were handled tainted the fairness of the trial, we vacate the convictions and remand.

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

## Background

Brown was employed as secretary and bookkeeper of Local 1111 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO. In that capacity she paid herself amounts in excess of her regular salary and charged substantial sums to the union's oil company credit cards. Charges were made on the credit cards by her husband, Homer Brown, and her son, Austin Wright. After an investigation by the United States Department of Labor's Office of Labor Management Standards, Brown was indicted for embezzlement in violation of 29 U.S.C. § 501(c) and falsifying union records in contravention of 29 U.S.C. § 439(c). A jury rejected her defense that the credit card usage and the extra salary allowances were authorized by the local's business manager, Lynn Wells, and convicted her of all counts. Sentenced to prison for 12 months, Brown timely appealed.

## Analysis

Brown advances numerous challenges to her convictions. We find one dispositive -- the handling of the testimonial privileges asserted by her husband and son.

Before calling Homer Brown to the stand the government knew that he would invoke the marital privilege and refuse to testify against his spouse. Homer Brown's attorney informed the government in writing prior to trial and did so orally in open court prior to *voir dire*. The government, nonetheless, called Homer Brown as its witness in the presence of the jury. Counsel immediately

2

conferenced at the bench and the court sustained Homer Brown's invocation of the spousal privilege. The court did not instruct the jury to disregard the fact that he had been called to the stand. That left the jury free to draw the obvious negative inference that his testimony would have been damaging to his wife.[1]

The government called Austin Wright over defense counsel's objection. After a few preliminary questions the prosecutor asked Wright whether his mother gave him a gasoline credit card belonging to Local 1111. Wright invoked his fifth amendment right not to incriminate himself. The court sustained this invocation of the privilege but denied defense counsel's request to admonish the jury to draw no negative inferences therefrom. Wright was dismissed without further questioning. As with Homer Brown, there is a reasonable probability that the jury inferred guilty knowledge on the part of both the defendant and the witness from Wright's refusal to testify.

Under certain circumstances the forced invocation of a testimonial privilege in the presence of the jury will warrant reversal.[2] One such circumstance is when the government makes a "conscious and flagrant effort to build a case based on the unfavorable inferences which inure from a claim of the privilege."[3]

---

[1] See **San Fratello v. United States**, 340 F.2d 560 (5th Cir. 1965).

[2] **United States v. Coveney**, 995 F.2d 578 (5th Cir. 1993).

[3] **United States v. Watson**, 591 F.2d 1058, 1062 (5th Cir.), cert. denied, 441 U.S. 965 (1979) (citing **Namet v. United States**, 373 U.S. 179 (1963)).

3

Another is when those inferences add critical weight to the government's case in a form that is not subject to cross-examination.[4] Both circumstances appertain herein. Business manager Lynn Wells testified that Darleene Brown was authorized to charge $50 a week on the credit cards, whether for personal or business use. Silence on the part of Brown's husband and her son suggested the contrary. Their claim of privileges impressed their conduct -- and hers -- with the stamp of criminality.[5] Because the two did not testify, defense counsel had no opportunity to cross-examine them in an effort to dispel the adverse inferences arising from their silence.[6] Unlike in **Watson**, on which the government relies, the trial court did not give a limiting instruction that might have offset the prejudice.

The record also reflects the spectre of prosecutorial misconduct with respect to Homer Brown. It is Hornbook law that one cannot be forced to testify against a spouse in a criminal proceeding.[7] Once formally notified that Brown intended to invoke that privilege, the government should have abandoned its plans to call him as a witness. At the very least the government should have carefully insulated its actions from the jury. At trial the government urged the district court to break new ground in this

---

[4]**Id**.

[5]See **San Fratello; United States v. Ritz**, 548 F.2d 510 (5th Cir. 1977).

[6]**Ritz**.

[7]**Trammel v. United States**, 445 U.S. 40 (1980).

4

circuit by extending the "joint crimes" exception, heretofore limited to confidential marital communications, to the privilege not to testify against one's spouse.[8]  That is a slender reed upon which to rest the prosecution's decision to call Homer Brown to the stand and thus dramatize to the jury his refusal to testify.  Any legitimate objections to the application of the spousal privilege should have been raised *in limine* and resolved out of the presence of the jury.

The convictions and sentences are VACATED and the matter is REMANDED for further proceedings consistent herewith.

---

[8]**United States v. Archer**, 733 F.2d 354 (5th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 861-62 (1984); **United States v. Mendoza**, 574 F.2d 1373 (5th Cir.), <u>cert</u>. <u>denied</u>, 439 U.S. 988 (1978).  The privilege protecting confidential communications between spouses may be invoked by the defendant spouse and is limited to such communications.  The rule against adverse spousal testimony bars the prosecution from forcing the defendant's spouse to testify against the defendant if the spouse does not wish to do so. 2 Wright, <u>Federal Practice and Procedure:  Criminal</u> 2d § 405 at 435, § 406 at 437-439 (1982 and 1993 Supp.).