JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Terrance Oldham ("Oldham"), appeals his conviction. Finding merit to the appeal, we reverse and remand.
 {¶ 2} In 2006, Oldham was charged with two counts of felonious assault and one count of having a weapon while under disability.[1] The felonious assault charges proceeded to a jury trial. At the end of the State's case, the trial court dismissed count one pursuant to Crim. R. 29. The jury found Oldham guilty of the remaining felonious assault charge and the firearm specification. The weapons charge was tried to the bench, and Oldham was found guilty. The court sentenced him to a total of five years in prison. The following evidence was presented at trial.
 {¶ 3} In April 2006, the victim, Anthony Lanier ("Lanier") and his girlfriend, Harriet Cole ("Cole"), visited the home of Cole's stepsister, Jennifer Perkins-Dixon ("Dixon"). Others arrived at Dixon's home, including Oldham, who became confrontational with Lanier, so Lanier decided to leave. As he exited the home, Oldham followed him outside in a belligerent manner. Lanier was surrounded by Oldham, Oldham's friend, Oldham's son, Terrence Reese ("Reese"), and Reese's friend. Lanier got into a stance to defend himself, at which point Oldham went back into the house. Oldham then returned outside, and Lanier observed a gun go up in the air. The gun went off, and Lanier hit the ground, scraping his face and *Page 3 
momentarily losing consciousness. He believed that he had been shot in the head. Lanier then saw the others restrain Oldham. Lanier ran away and called police, who responded along with EMS. Lanier was transported to the hospital and treated for his injuries.
 {¶ 4} Oldham now appeals, raising four assignments of error. In his first assignment of error, he argues that the trial court erred in permitting the State to call Reese as a witness when the State knew Reese would invoke his Fifth Amendment privilege. Oldham contends that the trial court erred by allowing the State to call Reese as a witness to prove that Oldham had a gun because Reese was charged, in another criminal case, with disposing of Oldham's gun.[2] In the second assignment of error, Oldham argues that the trial court erred in permitting the State to argue in closing that the gun had been disposed of by Reese and to mention that Reese was under indictment for hiding the gun. In the third assignment of error, Oldham argues that the trial court erred by failing to advise the jury that they could not make any inference from Reese's assertion of his Fifth Amendment rights. We will discuss these assignments of error together, because they involve the same evidence.
 {¶ 5} Reese was called as a witness pursuant to a subpoena issued by the State. Prior to his testifying, Reese informed the court that he intended to invoke his Fifth Amendment privilege. Reese's attorney had informed the trial court that he *Page 4 
was unavailable and had advised his client to assert his Fifth Amendment privilege. The trial court initially demonstrated its concern about the State's calling Reese as a witness, without his counsel, but allowed the State to question Reese.
 {¶ 6} The State's line of questioning involved factual questions as to who was present at Dixon's home, Oldham's demeanor, and whether Reese knew Lanier. When Reese was asked if he recalled an altercation between his father and Lanier, Reese invoked his Fifth Amendment privilege. However, defense counsel was permitted to question Reese on cross-examination. Defense counsel asked Reese if he had invoked the Fifth Amendment because he was under indictment. Reese replied, "Yes, I am."[3] Then, during the State's closing argument, the following colloquy occurred:
 "Prosecutor: "Gun. The big thing here is the gun is not recovered. Where is the gun? I think we know where the gun is. Mr. Reese had the gun. He told you he was — he told the defense he's under indictment for hiding the gun. It's called obstruction of justice. He told you —
 Defense Counsel: Objection, your honor.
 Prosecutor: He brought it up.
 Court: I'm not sure that that was offered. Continue."
 {¶ 7} The seminal case concerning the refusal of a witness to testify during a criminal trial is Namet v. United States (1963), 373 U.S. 179,83 S.Ct. 1151. In Namet, the United States Supreme Court outlined two theories which would support *Page 5 
a finding of reversible error when a witness asserts his Fifth Amendment privilege. First, the Court stated that error may be based upon prosecutorial misconduct when the government "makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege." Id. Second, error may arise when, "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." Id.
 {¶ 8} In applying the two-pronged Namet test, courts have considered a number of factors including: the prosecutor's intent in calling the witness, the number of questions asked that elicit an assertion of the Fifth Amendment privilege, whether defense counsel objects to the prosecutor's conduct, whether the prosecutor attempts to draw adverse inferences in closing argument from the witness' refusal to testify, whether the witness is closely related to the accused, whether the allegedly adverse inferences drawn from an assertion of the testimonial privilege relate to central issues in the case or collateral matters, and whether the inference is the only evidence bearing upon the issue or is cumulative of other evidence. See Namet, supra; Zeigler v.Callahan (1981), 659 F.2d 254; Douglas v. Alabama (1964), 380 U.S. 415,85 S.Ct. 1074; State v. Carballo (Oct. 16, 1989), Madison App. No. CA88-02-006.
 {¶ 9} Moreover, in United States v. Brown (1994), 12 F.3d 52, the Fifth Circuit Court of Appeals held that a prosecutor cannot call a witness, knowing that the *Page 6 
witness will invoke his right not to testify, when it is done to create an improper inference. The prosecution in Brown called the defendant's son and husband to testify, knowing that they would refuse to testify. The Brown court held that:
 "* * * [T]here [was] a reasonable probability that the jury inferred guilty knowledge on the part of both the defendant and the witness from Wright's [the son's] refusal to testify.
 Under certain circumstances the forced invocation of a testimonial privilege in the presence of the jury will warrant reversal. One such circumstance is when the government makes a `conscious and flagrant effort to build a case based on the unfavorable inferences which inure from a claim of the privilege.' Another is when those inferences add critical weight to the government's case in a form that is not subject to cross-examination." Id. (Citations omitted).
 {¶ 10} Furthermore, in People v. Giacalone (1977), 399 Mich. 642,250 N.W.2d 492, the Michigan Supreme Court held that:
 "A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant to `* * * knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmissible evidence'; * * * `to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege.* * *'
 The rationale of the rule has been explained by the Supreme Court of Iowa: `When an alleged accomplice invokes the privilege in the presence of the jury, prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination.' State v Allen, 224 NW2d 237, 241 (Iowa, 1974)." *Page 7 
 {¶ 11} Furthermore, Ohio's Code of Professional Responsibility, DR 7-104, which governs an attorney's communicating with one of adverse interest, provides in pertinent part:
 "(A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."
 {¶ 12} A review of the record reveals that the State was well aware that Reese, who had been indicted, was represented by counsel who advised him to assert his Fifth Amendment privilege. Prior to being called as a witness and outside of the jury's presence, Reese repeatedly stated that he had no intention of testifying. Nonetheless, the State argued that it could call Reese as a witness without touching on the areas that might be incriminating to him. The court was hesitant to allow the State to call Reese as a witness, but allowed him to testify without his counsel's consent or presence. On direct examination, Reese asserted his Fifth Amendment privilege. Then, in closing argument, the State drew the adverse inference when it said that Reese was under indictment for hiding the gun. This specific information had not been offered into evidence.
 {¶ 13} The jury was able to infer that Reese, who is Oldham's son, invoked his Fifth Amendment privilege because he had hidden the gun which his father had used to shoot at Lanier. Because there was no evidence of a gun or gunshot residue at the scene and no mention of a gunshot wound in the medical records, the inference *Page 8 
that Reese had hidden the gun corroborated the State's case. Moreover, the record also reveals that the court failed to instruct the jury concerning the inference to be drawn from Reese's refusal to testify and how to treat the State's remarks made in closing argument. Thus, Reese's claim of privilege tended to place an air of criminality upon the actions of Reese and Oldham. Therefore, we find that the State made a conscious and flagrant effort to build its case based on the unfavorable inferences that inured from Reese's invocation of his Fifth Amendment privilege. We also find the inference that Reese had hidden the gun added critical weight to the State's case. Therefore, the first, second, and third assignments of error are sustained.
 {¶ 14} In the fourth assignment of error, Oldham argues that the cumulative nature of the aforementioned errors by the trial court resulted in the failure to provide Oldham a fair trial. However, because we find merit to the first, second, and third assignments of error, we need not address this assigned error.
 {¶ 15} Judgment reversed and case remanded for a new trial.
It is, therefore, ordered that appellant recover of appellee the costs herein.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 9 
COLLEEN CONWAY COONEY, PRESIDING JUDGE
CHRISTINE T. McMONAGLE, J. CONCURS;
SEAN C. GALLAGHER, J. CONCURS (WITH SEPARATE OPINION)
[1] Both felonious assault charges carried notices of prior conviction, repeat violent offender, and firearm specifications.
[2] Reese was charged in Case No. 06-480422 with obstruction of justice and tampering with evidence.
[3] The trial court did not give the jury a curative instruction.