PEOPLE v GIACALONE

Docket No. 56005. Argued February 5, 1976 (Calendar No. 13).—
Decided February 15, 1977.

Joseph Giacalone and Caesar Montevecchio were convicted by
a jury in Genesee Circuit Court, Donald R. Freeman, J., of
armed robbery. Another codefendant, Loren Jolly, was sepa-
rately tried and convicted. Montevecchio's conviction was re-
versed on appeal on the ground that the prosecutor's remarks
to the jury were improper. Giacalone appealed, raising six
issues, including the remarks by the prosecutor and that the
prosecutor acted improperly in calling Jolly as a witness know-
ing that he would claim the privilege against self-incrimina-
tion. The Court of Appeals, Lesinski, C. J., and Holbrook and
Bashara, JJ., affirmed (Docket No. 16852). Defendant appeals.
*Held:*

1. A lawyer may not knowingly offer inadmissible evidence or
call a witness knowing that he will claim a valid privilege not
to testify. When an alleged accomplice invokes the privilege in
the presence of the jury, prejudice arises from the human
tendency to treat the claim of privilege as a confession of
crime, creating an adverse inference which an accused is pow-
erless to combat by cross-examination.

2. When Jolly declined to answer whether he recalled the
date of the offense on the ground that his answer might tend to
incriminate him, the jury may have inferred that the answer if
given would have been favorable to the prosecution. The jurors
had been informed through independent testimony that Jolly
and Giacalone had committed the offense, and an adverse
inference may have carried over to Giacalone.

Reversed and remanded.

52 Mich App 428; 217 NW2d 444 (1974) reversed.

1. ATTORNEY AND CLIENT—UNPROFESSIONAL CONDUCT—TRIAL—INAD-
MISSIBLE EVIDENCE—WITNESSES—PRIVILEGE.

A lawyer may not knowingly offer inadmissible evidence or call a

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 141.
[2] 21 Am Jur 2d, Criminal Law § 356.

witness knowing that he will claim a valid privilege not to testify.

2. CRIMINAL LAW—TRIAL—PROSECUTORIAL MISCONDUCT—WITNESSES—PRIVILEGE.

A prosecutor acted improperly in calling a codefendant as a witness knowing that he would claim the privilege against self-incrimination; when the codefendant declined to answer whether he recalled the date of the offense, the jury may have inferred that the answer if given would have been favorable to the prosecution and may have carried the inference over to the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Senior Assistant Prosecuting Attorney, for the people.

*Thomas R. McCombs* for defendant.

LEVIN, J. Joseph Giacalone, Caesar Montevecchio and Loren Jolly were charged with armed robbery.[1]

Jolly was separately tried and convicted. Giacalone and Montevecchio were tried together and convicted.

In this appeal of Giacalone's conviction,[2] he asserts that, in calling Jolly as a witness knowing

---

[1] MCLA 750.529; MSA 28.797.

[2] Montevecchio appealed separately; his conviction was reversed because of improper closing argument by the prosecutor, *People v Montevecchio,* 32 Mich App 163; 188 NW2d 186 (1971).

Giacalone's conviction was affirmed by a different panel of the Court of Appeals, *People v Giacalone,* 52 Mich App 428; 217 NW2d 444 (1974), which found the same remarks not to be sufficiently prejudicial to merit reversal in the absence of timely objection and request for a cautionary instruction.

Jolly's conviction was affirmed on appeal but sentence was vacated and the cause was remanded for sentencing because "the trial judge impermissibly considered certain matters in the sentencing process", *People v Jolly,* 51 Mich App 163; 214 NW2d 849 (1974).

that he would claim the privilege against self-incrimination, the prosecutor acted improperly.

Charles Kinsman, a confederate turned state's witness, testified that he drove a getaway car. Jolly and Montevecchio entered a jewelry store and committed the robbery. Giacalone drove another getaway car.

Giacalone's roommate testified that on the morning of the robbery Giacalone awakened him and told him to leave the apartment because he thought the police were outside. Jolly was in the living room sorting jewelry. Montevecchio came in as the roommate was leaving.

Kinsman identified a necklace he had retrieved from Giacalone's sister; he said Giacalone had taken it from the stolen jewelry. The sister testified that Giacalone had given her a necklace two months after the robbery, that Kinsman had stolen the necklace from her, and that the necklace introduced at trial was not the one her brother gave her. Giacalone's mother corroborated her daughter's testimony.

Jolly's attorney advised the judge and other counsel that Jolly would claim his Fifth Amendment privilege and refuse to testify.[3] The prosecutor was permitted, over objection, to call Jolly to the stand. He asked two questions and when Jolly invoked the privilege sat down:

"*Q.* What is your name?

"*A.* Loren Jolly.

"*Q.* Mr. Jolly, do you recall the date of August 15, 1967?

"*A.* By advice of counsel, I refuse to answer on the ground that it may tend to incriminate me."

---

[3] Although Jolly had already been convicted, an appeal was pending. He could still exercise the privilege. *See People v DenUyl,* 318 Mich 645; 29 NW2d 284 (1947).

A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant

—"knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence";[4]

—"to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege."[5]

The rationale of the rule has been explained by the Supreme Court of Iowa:

"When an alleged accomplice invokes the privilege in the presence of the jury, prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination." *State v Allen,* 224 NW2d 237, 241 (Iowa, 1974).[6]

---

[4] ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971), § 5.6(b) (the prosecution function) and § 7.5(b) (the defense function).

[5] *Id,* § 5.7(c) (the prosecution function) and § 7.6(c) (the defense function).

[6] The commentary accompanying the ABA Standards similarly states that the rule against calling a witness knowing that he will exercise a valid privilege not to testify is grounded in " 'the impossibility of effective cross-examination and the possibility that the jury may give inferences from the claim of privilege more weight than they deserve.' Note, *[Exercise of the Privilege Against Self-Incrimination by Witnesses and Codefendants: The Effect Upon the Accused,]* 33 U Chi L Rev 151, 154[165] (1965)." ABA Standards, *supra,* commentary accompanying the prosecution function, § 5.7, p 125. *See, generally,* Anno: *Prejudicial effect of prosecution's calling as witness, to extract claim of self-incrimination privilege, one involved in offense with which accused is charged,* 86 ALR2d 1443.

A number of state courts have reversed convictions where a prosecutor called an accomplice knowing that he would exercise his Fifth Amendment privilege. *State v Duhon,* 332 So 2d 245 (La, 1976); *Johnson v State,* 158 Tex Crim 6; 252 SW2d 462 (1952); *De Gesualdo v People,* 147 Colo 426; 364 P2d 374; 86 ALR2d 1435 (1961). *Cf. State v Vega,* 85 NM 269; 511 P2d 755 (Ct App, 1973).

Michigan case law recognizes the danger that an adverse inference may be drawn from a claim of testimonial privilege. It has been held to be error for a prosecutor to call a witness, forcing the defendant in the jury's presence to claim the marital privilege or the attorney-client privilege.[7]

When Jolly declined to answer whether he recalled "the date of August 15, 1967", the date of the offense, on the ground that his answer "may tend to incriminate me" the jury may have inferred that the answer if given would have been favorable to the prosecution. The jurors were informed through Kinsman's testimony that Jolly and Giacalone had committed the offense. Jolly

---

There is disagreement whether a claim of the self-incrimination privilege logically supports an inference of guilt. While the law draws no such inference, "the layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime". 8 Wigmore, Evidence (McNaughton rev), § 2272, p 426.

Our holding is based on evidentiary trial error. A number of recent decisions finding error in a prosecutor's calling and questioning a witness he knows will claim the privilege do so on Sixth Amendment grounds—the defendant was denied his right of confrontation because the inference is not subject to cross-examination. *See State v Nelson,* 72 Wash 2d 269; 432 P2d 857 (1967); *Commonwealth v Terenda,* 451 Pa 116; 301 A2d 625 (1973); and *Robbins v Small,* 371 F2d 793 (CA 1, 1967), *cert den* 386 US 1033; 87 S Ct 1483; 18 L Ed 2d 594 (1967). *See also Douglas v Alabama,* 380 US 415; 85 S Ct 1074; 13 L Ed 2d 934 (1965).

We see no need to reach the constitutional issue. Difficulty in obtaining effective cross-examination has been a traditional reason for excluding evidence—for example, hearsay.

[7] *See People v·Trine,* 164 Mich 1; 129 NW 3 (1910) (marital), and *People v Dahrooge,* 173 Mich 375; 139 NW 22 (1912) (attorney-client).

was thus connected to Giacalone. An adverse inference from Jolly's refusal to answer may have carried over to Giacalone.

Giacalone's counsel vigorously objected to the calling of Jolly. No instruction concerning Jolly's claim of privilege was given.[8]

---

[8] The judge instructed that Jolly was not a party to the case and that the disposition of his case had no bearing on the guilt or innocence of Montevecchio and Giacalone. He further instructed that no adverse inference should be drawn from the failure of Montevecchio and Giacalone to testify. There was, however, no instruction that an adverse inference should not be drawn against Montevecchio and Giacalone as a result of Jolly's counsel's objection to the questions put to Jolly and his refusal to testify on the ground that his testimony might incriminate him.

Asking a jury not to draw an adverse inference from a witness's claim of privilege may underscore the inference; even if some or all the jurors had missed the inference, the instruction will draw it for them. Our disposition makes it unnecessary to consider whether an instruction would cure the error.

In *United States v Maloney,* 262 F2d 535, 538 (CA 2, 1959), Judge Learned Hand, speaking for the Court, felt constrained to hold, on the basis of the case law at the time, that an instruction would cure the error but he said:

"As *res integra,* it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them, imposing, as they do, upon the jury a task beyond their powers: i.e. a bit of 'mental gymnastics,' as Wigmore § 2272 calls it, which it is for practical purposes absurd to expect of them."

Cases that grounded reversal on the Sixth Amendment have held that an instruction will not cure the error. *See Commonwealth v Terenda, supra,* and *Robbins v Small, supra; San Fratello v United States,* 340 F2d 560 (CA 5, 1965).

A consideration militating against allowing the error to be cured by instruction is that it would in effect vest an unstructured discretion in judges to substitute an instruction of doubtful efficacy for compliance with the well-established rule. The rule would then become that a lawyer may not call a witness who he knows will claim the privilege unless the judge allows him to do so and cautions the jury not to draw an adverse inference.

The defendant duly objected, alerting both the prosecutor and the judge to the impropriety of what was proposed, in contrast with *Namet v United States,* 373 US 179; 83 S Ct 1151; 10 L Ed 2d 278 (1963), where the prosecutor had a basis for believing that the privilege would not be exercised and it was debatable whether it could be validly claimed and where no objection was made.

As stated by the Court of Appeals of New Mexico:

"Nor can we agree with the proposition that defendant has the burden of showing prejudice. Under the circumstances of this case

Reversed and remanded.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZ-GERALD, and RYAN, JJ., concurred with LEVIN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.

prejudice is presumed. Once the state has obtained the benefit of the inference of defendant's guilt, which is not subject to cross-examination, it cannot have the benefit of a presumption that this inference was not prejudicial and shift the burden to defendant to show there was prejudice." *State v Vega*, 85 NM 269, 272; 511 P2d 755, 758 (Ct App, 1973).