PEOPLE v BASHANS

PEOPLE v HERBIN

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES—REQUESTS FOR INSTRUCTIONS—SPECIFICITY.

A defendant's requests for instructions to the jury on lesser included offenses must be sufficiently definite and unequivocal to apprise the trial court of what instructions it is being asked to give; a trial court did not err in refusing to instruct on lesser included offenses where defense counsel's oral requests for instructions were equivocal, failing to specify with clarity upon what assertedly lesser included offenses he wanted the jury instructed.

2. CRIMINAL LAW—EVIDENCE—HEARSAY—EXCEPTIONS—STATEMENT AGAINST PENAL INTEREST.

A decision of the Michigan Supreme Court which holds that a statement against penal interest is admissible as an exception to the hearsay rule is not retroactive; therefore, a trial court in a trial held prior to that decision did not err in refusing to admit testimony of a witness regarding an alleged statement of another person, since deceased, to the effect that the defendant had been tricked into committing the crime for which he was on trial.

3. WITNESSES—CRIMINAL LAW—TRIAL—ATTORNEYS—PRIVILEGE NOT TO TESTIFY—CODEFENDANTS.

It is improper for an attorney to call a witness who he knows will claim a valid privilege not to testify; however, no reversible error occurred when a defense attorney was allowed to call his client's codefendant, knowing that he would not testify, where the state did not attempt to implant an unfair inference in the minds of the jurors by emphasizing that a person closely

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 882.
[2] 29 Am Jur 2d, Evidence §§ 619–620.
[3] 75 Am Jur 2d, Trial § 192.
[4] 5 Am Jur 2d, Arrest § 25.

associated with the defendant had exercised his privilege not to testify, where there was no timely objection by the codefendant's counsel, and where the trial judge was careful to instruct the jury concerning the codefendant's claim of privilege.

4. ARREST—FELONY—JURISDICTION OF POLICE—PROBABLE CAUSE— STATUTES.

Any citizen given probable cause, including a police officer acting outside of his jurisdiction, may make an arrest for a felony being committed in his presence or when the person to be arrested has committed a felony, although not in the presence of the person seeking to make the arrest; therefore, an arrest was proper, although made outside of the arresting officers' jurisdiction, where surveillance of the defendants' activities throughout the commission of the crime gave the officers probable cause to arrest the defendants (MCLA 764.16; MSA 28.875).

Appeal from Saginaw, Joseph R. McDonald, J. Submitted October 11, 1977, at Lansing. (Docket Nos. 29441, 31063.) Decided January 23, 1978.

Jacob P. Bashans and Harry Herbin were convicted of breaking and entering with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Lawrence W. Smith,* Assistant Prosecuting Attorney, for the people.

*Thomas L. Frank,* for defendant Jacob P. Bashans.

*Craig H. Dill,* for defendant Harry Herbin on appeal.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

Danhof, C. J. Defendants were convicted by a jury of breaking and entering with intent to commit larceny, contrary to MCLA 750.110; MSA 28.305. Defendants were sentenced to terms of from 6 to 15 years imprisonment and now appeal by right.

I

Defendant Bashans assigns as error the trial court's refusal to instruct on "larceny" and "entering without breaking and without permission", as requested by his counsel. This refusal occurred two days before the Supreme Court released opinions in *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975), *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), and *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975). We need not address the question of retroactivity, however, since we conclude that the trial judge did not err even under the post-*Ora Jones* rules.

Defense counsel failed to specify with clarity upon what assertedly lesser included offenses he wanted the jury instructed, at one point referring to "larceny" and "entering without breaking and without permission" and at another point referring to "larceny from a building" and "breaking and entering without permission".[1] Appellate counsel has not attempted to remedy this confusion, asserting at various points in his brief that defendant was entitled to instructions on "larceny" and "larceny from a building" and on "entering without breaking and without permission"

---

[1] In his objection to the judge's charge, Bashans' counsel referred to instructions on the lesser offenses of "larceny from a building" and "breaking and entering without permission". On appeal, defendant Bashans refers to the offenses variously as "larceny from a building" and "entering without breaking and without permission", and "larceny" and "breaking and entering of a dwelling without permission".

and "breaking and entering of a dwelling without permission". In *People v Herbert Smith,* 396 Mich 362, 363–364; 240 NW2d 245 (1976), the Court held that under the rule of *People v Henry, supra,* at 374, which requires a request for instructions on lesser included offenses before reversal is warranted for failure to so instruct,

"The issue is not preserved * * * by a general request for an instruction on the 'lesser included offenses'. We have recognized that the trial judge must rely on requests from counsel in carrying out his responsibility to instruct the jury. *Henry, supra.* He must receive more assistance from counsel than a mere request for an instruction on lesser included offenses to make his failure to so instruct reversible error." (Footnotes omitted.)

*Herbert Smith* imposes upon defense counsel a requirement of specificity; requests for instructions on lesser included offenses must be sufficiently definite and unequivocal to apprise the trial court of what instructions it is being asked to give. For the present, at least, the trial judge may continue to rely on requests from counsel in formulating his instructions. *People v Henry, supra,* at 374, *People v Herbert Smith, supra,* see generally, *People v Coles,* 79 Mich App 255; 261 NW2d 280 (1977). In this case, defense counsel's shifting oral requests for instructions on lesser included offenses were insufficient to satisfy the requirements of *Henry, supra,* and *Herbert Smith, supra.*[2] Accordingly, the

[2] We leave for determination in future cases the question of whether other imprecise requests satisfy the requirements of *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975), and *People v Herbert Smith,* 396 Mich 362; 240 NW2d 245 (1976). It is also unnecessary to determine which of defense counsel's two oral requests for instructions governed, since neither request was adequate.

Of course, if defense counsel is regarded as having requested instruction on the 90-day misdemeanor of entering with or without breaking

trial judge did not err in refusing defense counsel's equivocal oral requests for instructions.[3]

## II

Defendant Herbin attempted to introduce testimony by one Robert Lacy, a prisoner in the county jail who professed to know one LaVerne Averill, to the effect that Averill (who was deceased at the time of trial) had told Lacy that he had "duped" defendant Herbin into removing furniture from a house by telling Herbin that the house and the furniture belonged to him (Averill) and that he wanted the furniture moved. The trial judge refused to admit Lacy's testimony on the ground that it was hearsay. Defendant brought a motion for new trial, claiming that under *People v Ernest Edwards,* 396 Mich 551; 242 NW2d 739 (1976), which was decided approximately six months after the trial of the instant case, Lacy's testimony was admissible because Averill's statement was a declaration against penal interest. The trial court denied the motion for new trial. We affirm, on

---

without permission, MCLA 750.115; MSA 28.310, *see* MCLA 750.504; MSA 28.772, no instruction on that offense would be permitted at a second trial under the prospective rule of *People v Chamblis,* 395 Mich 408, 429; 236 NW2d 473 (1975), and therefore reversal on this point would not be warranted. *See People v Rappuhn,* 78 Mich App 348; 260 NW2d 90 (1977).

[3] In light of our holding, it is unnecessary to add to the confusion generated by the Supreme Court's cryptic order in *People v Keatts,* 54 Mich App 618; 221 NW2d 455 (1974), *rev'd without opinion,* 396 Mich 803 (1976). Since *Keatts* involved a conviction for *attempted* larceny in a building, even Judge BASHARA's dissenting opinion in *Keatts* suggests that instruction still would not have been required on larceny, *People v Page,* 73 Mich App 667, 670, 671; 252 NW2d 239 (1977), *People v Robert Brown,* 72 Mich App 749, 750; 250 NW2d 522 (1976), or larceny in a building, *People v Huffman,* 315 Mich 134; 23 NW2d 236 (1946), *People v Page, supra,* at 670, 676–678, *People v Robert Brown, supra,* at 750, and this would be so even if defense counsel had unequivocally elected to request instruction on either or both offenses.

authority of *People v Alexander,* 72 Mich App 91, 96; 249 NW2d 307 (1976), with the reasoning of which we agree, holding *People v Ernest Edwards, supra,* nonretroactive.

## III

Defendant Bashans called as his first witness his codefendant, Harry Herbin. When counsel for defendant Bashans called Herbin, Herbin's counsel announced to the court that he would like to make an objection out of the presence of the jury whereupon the jury was excused. The court agreed that Bashans could not compel Herbin to be a witness, since Herbin was himself on trial, but after conferring with his client, Herbin's counsel announced that Herbin would testify after all. This announcement prompted the court to explain to defendant Herbin at some length his right not to testify.[4] The

---

[4] "THE COURT: Mr. Herbin, I am going to have to put you on the record on this case here. Do you understand that you are on co-trial with Mr. Bashans in this case, and as I will be telling the jury, each of you has a right to separate consideration, and the election to testify or not to testify is within your prerogative. And if you choose not to testify, I will tell this jury they have no right to infer guilt from your silence.

"This is basic to our system and a right that we have to inform every defendant of before we take his plea.

"Now, if you elect to answer this, Mr. Frank has no right to call you as a co-defendant in this case, on the very grounds that you do not have to. You are being tried with Mr. Bashans and you do not have to and he cannot invade that right of yours no more than the Prosecution could call you under any theory of the case.

"So, if you give up this right, of course, then once you give this up, you will give it up on this record. And when you do, you have an irretraceable step.

"You have heard the opening statement of Mr. Bashans' attorney in which he admits being at 6150 Townline Road. Now, this is a very important element in this case, which the People must prove. And if you take that stand, and once you waive this privilege, then you have waived it. You can't later on claim that at the time we come to your case, which Mr. Bright will be making an opening statement on, after Mr. Frank's.

"There is no way you can retrace this."

rest of the day was consumed in making separate records of certain testimony to determine questions of admissibility.

On the next day of trial, out of the jury's presence, the court inquired whether defendant Herbin still wished to testify as a witness for Bashans. The following colloquy ensued:

"MR. BRIGHT [counsel for defendant Herbin]: Judge, I have conferred with Mr. Herbin last night and again very briefly this morning, and it is my understanding this morning that Mr. Herbin will not take the stand when called or will not take the stand if called by [Bashans' counsel], that he reserves the right to take the stand on his own behalf, but it is his decision not to testify if called by Mr. Frank.

"THE COURT: So, if—I'll make it plain when we reopen again. I will ask Mr. Frank to call his first witness. If you call Mr. Herbin, of course, then the court will explain to the jury that under our system of law, a person accused of a crime—and Mr. Herbin is a co-defendant—does not have to take the stand as a witness in this case where he himself is on trial, unless he does it in his own behalf.

"And he has a right to do this and a right not to do that. And if he chooses not to, they may not in any way use this fact against him in their deliberations.

"If that's called, I will make that explanation to the jury.

"Then when it comes time to put on his defense he, of course, has that right to testify in his own behalf or not.

"So, if we have any questions now, I would like to have them raised right now, before I call the jury back. This is defense, so, the Prosecutor really has no control over the situation.

"You have a right to call whom you wish."

When asked by the court whether there was "anything before we call the jury back?", Herbin's

counsel replied, "I have nothing". Thereupon, defendant Bashans' counsel called Herbin to testify, and the following occurred:

"THE COURT: Mr. Bright [Herbin's counsel]?

"MR. BRIGHT: Your Honor, the election as to whether or not Mr. Herbin shall take the stand is his own election. He is a co-defendant in this matter.

"I would object to the calling of Mr. Herbin as a witness by Mr. Frank and would state for the court that Mr. Herbin elects not to take the stand at this point, but reserves the right to take the stand on his own behalf, if he desires to do so.

"THE COURT: The court would instruct the jury that this is the right of Mr. Herbin. He is a co-defendant in this case, and under our system of law, as I instructed you at the beginning, these defendants are presumed to be innocent of the charges against them; the burden of proof is on the People to prove their guilt, and no man on trial may be required to give testimony in a case. He may do so, if he wishes, or he may decline to do so.

"If he declines to do so, you, as jurors, cannot consider the fact that he does not testify in any way as inferring [sic] guilt, because the duty remains at all times in a criminal case on the People to prove the guilt of the people accused of a crime beyond a reasonable doubt.

"So, Mr. Herbin has a right not to take the stand in this case, and you may not in any way infer anything from his refusal at this time to be called as a witness.

"Call your next witness * * * ."

The trial judge was in error when he stated that "you [Bashans' counsel] have a right to call whom you wish". As the Court observed in *People v Giacalone,* 399 Mich 642, 645; 250 NW2d 492 (1977),

"A lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify. The American Bar Associ-

ation standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant

"— 'knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence';[4]

"— 'to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege.'[5]

---

"[4] ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971), § 5.6(b) (the prosecution function) and § 7.5(b) (the defense function).

"[5] *Id.,* § 5.7(c) (the prosecution function) and § 7.6(c) (the defense function)."

---

That Bashans' right to call Herbin was thus qualified is clear not only from the standards above quoted, but also from the result in *Giacalone, supra.* The question remains, however, whether the error committed by Bashans' attorney when he went through the motions of calling codefendant Herbin, who he knew intended to claim his privilege not to testify, warrants reversal. For the reasons outlined below, we conclude it does not.

The most basic distinction between *Giacalone* and the present case is that here it was co-defense counsel, and not the prosecutor, who committed the error. Although we acknowledge that in more aggravated circumstances this distinction would not necessarily be controlling, since the standards above quoted apply equally to defense counsel and prosecutors, that it has some significance is strongly suggested by *Giacalone* and the authorities relied upon therein, all of which involve prosecutorial error. See *Giacalone, supra,* at 645 n 6, 646, 647 n 8, *People v Dahrooge,* 173 Mich 375;

139 NW 22 (1912), *People v Trine,* 164 Mich 1; 129 NW 3 (1910), Anno: *Prejudicial effect of prosecution's calling as witness, to extract claim of self-incrimination privilege, one involved in offense with which accused is charged,* 86 ALR2d 1443. Here the state did not attempt to implant an unfair inference in the minds of the jurors by emphasizing the fact that a person closely associated with the defendant had chosen to exercise his privilege not to testify.

Secondly, as the extensive quotations from the proceedings reveal, the procedure employed here was outlined to Herbin's counsel by the trial judge before the jury returned, yet defense counsel failed to interpose any objection at that time. Although we disapprove the practice of permitting counsel to call a codefendant who he already knew would raise a claim of privilege, Bashans' counsel must share the blame for whatever potential prejudice to his client may have resulted, since he failed to raise any objection to the procedure that he knew beforehand would unfold before the jury. Counsel's *pro forma* objection when his client was called was, in effect, an agreed upon signal to the trial judge to give the curative cautionary instruction that followed, rather than a timely objection to his client being called. Counsel's failure to lodge a timely objection distinguishes this case from *Giacalone, supra,* at 647.

The most important distinction between this case and *Giacalone, supra,* at 647, however, is that here the trial judge was careful to instruct the jury concerning Herbin's claim of privilege.

"Where error is assigned because the prosecution has called as a witness one involved with the defendant in the commission of the offense for which the defendant is on trial only to elicit from the witness a refusal to

testify under claim of privilege, an appropriate curative instruction or admonition to the jury will usually eliminate the prejudice created by the incident or cure the error."[5] Anno, *supra,* at 1456.

In this case the instruction, as well as the objection, was carefully framed in terms of an absolute right to testify, or not, as Herbin chose. Herbin was not even required to take the stand and submit to questioning before he claimed his privilege and obtained the insulating instruction. *Cf. Giacalone, supra,* at 645 n 6, 646, *People v Trine, supra, People v Dahrooge, supra, People v Savard,* 73 Mich App 175; 250 NW2d 565 (1977), *People v McNary,* 43 Mich App 134; 203 NW2d 919 (1972), aff'd 388 Mich 799 (1972). Consequently, absolutely no questioning occurred from which any particular prejudicial inference could have arisen. *Cf. United States v Maloney,* 262 F2d 535, 537–538 (CA 2, 1959).

We conclude that, although the trial judge ought not to have permitted defense counsel to call a codefendant who he already knew would not testify, the lapse, when viewed in the context of the entire trial, did not amount to a planned or deliberate attempt to make capital out of a witness's refusal to testify. See *Namet v United States,* 373 US 179, 189; 83 S Ct 1151, 1156; 10 L Ed 2d 278, 285 (1963). Therefore, reversal is neither required nor warranted. See *People v Giacalone, supra,* at 647.

## IV

The contention that the arresting officers were

---

[5] *See United States v Maloney,* 262 F2d 535, 538 (CA 2, 1959) ("We rest our decision therefore upon the fact that the accredited ritual was not followed * * * ."), cf. *People v Giacalone,* 399 Mich 642, 647 n 8; 250 NW2d 492 (1977) (expressing some doubt, but not deciding, whether a curative instruction would cure the error).

without authority to arrest defendants because the arrest occurred outside of their jurisdiction is without merit. Although it is true that officers acting outside of their own jurisdiction and not in conjunction with a law enforcement department that has jurisdiction do so without police authority, see MCLA 764.2a; MSA 28.861(1), given probable cause, any citizen, including a police officer acting outside of his jurisdiction, may make an arrest for a felony being committed in his presence or when the person to be arrested has committed a felony, although not in the presence of the person seeking to make the arrest. MCLA 764.16; MSA 28.875. The officers' surveillance of the house that was broken and entered, to which they followed defendants from their own jurisdiction, throughout the commission of the crime clearly gave them probable cause to arrest defendants pursuant to MCLA 764.16; MSA 28.875.

With regard to Bashans' counsel's attempt to impeach detective Stinson's testimony with an allegedly inconsistent statement contained in his police report, we find no error in the trial judge's refusal to permit it. The matter was not only collateral and the subject of opinion, but the question was entirely unsupported by detective Stinson's report.

The convictions are affirmed.