# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HILARY CORNELIUS OWENS,

Defendant-Appellant.

UNPUBLISHED
December 6, 2018

No. 333155
Wayne Circuit Court
LC No. 15-009147-01-FC

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of first-degree murder, MCL 750.316(1)(a); felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant to life in prison for his murder conviction, 1 to 5 years' imprisonment for his felon-in-possession conviction, and 5 years' imprisonment for his felony-firearm conviction. We affirm.

Defendant's convictions arose from the shooting death of 27-year-old Demetrice Hunt, who was killed in the early morning hours of September 19, 2015, outside of a nightclub in Detroit. The victim was shot five times, and he died as a result of his gunshot wounds. On the night of the shooting, the victim and his friends were involved in a physical fight with several individuals, including defendant's cousin. The fight began inside the club and spilled outside onto the street. Although defendant did not participate in the inside portion of the brawl, he did become involved with the altercation outside the club. Video footage from the club, as well as defendant's own testimony and other evidence, placed defendant at the scene. An eyewitness identified defendant as the shooter. The jury convicted defendant as noted. Defendant now appeals as of right.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first argues that defense counsel provided ineffective assistance by failing to adequately prepare defendant to testify in light of the surveillance videos and recordings of defendant's jailhouse telephone calls, which were used to impeach defendant at trial. Defendant also argues that it would have better for defendant not to testify and that counsel provided ineffective assistance by advising defendant to testify. Additionally, defendant contends that defense counsel provided ineffective assistance by failing to review the

-1-

surveillance footage with a defense witness to ensure that her trial testimony comported with the video evidence. Finally, defendant argues that defense counsel provided ineffective assistance by calling another witness to testify at trial, despite knowing that that witness would offer testimony inconsistent with his prior statements. These arguments are without merit.

Defendant preserved his ineffective-assistance claims by moving for a new trial and an evidentiary hearing. See *People v Sabin (On Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Following a *Ginther*[1] hearing, the trial court made findings of fact and concluded that defendant had not been denied the effective assistance of counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings for clear error, and we review de novo questions of constitutional law. *People v Aspy*, 292 Mich App 36, 45; 808 NW2d 569 (2011).

"To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). Defendant also bears the burden of establishing the factual predicate for his claim. *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Decisions regarding what witnesses to call and what evidence to present are presumed to be matters of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Likewise, counsel's advice regarding a defendant's decision to testify is presumed to be a matter of trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The fact that a strategy ultimately proves to be unsuccessful does not necessarily render counsel ineffective. *Solloway*, 316 Mich App at 190.

First, defendant asserts on appeal that it would have been better had he not testified, and defendant appears to blame counsel for calling him as a witness. But in actuality, as found by the trial court and supported by defense counsel's testimony at the *Ginther* hearing, defense counsel advised defendant *not* to testify and clearly explained the risks of testifying, including the risks of impeachment. Nevertheless, defendant exercised his right to testify, against the advice of counsel. See *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) ("If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection."). Defense counsel's advice regarding the decision to testify was a matter of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial strategy, see *Tommolino*, 187 Mich App at 17, and defense counsel cannot be considered ineffective because defendant disregarded counsel's advice.

Second, defendant contends that counsel failed to prepare defendant to testify in light of the surveillance videos and jailhouse calls. Contrary to defendant's suggestion that defense counsel was not aware of the recordings' contents, the record shows that defense counsel personally reviewed the jailhouse calls and the surveillance videos. Further, as found by the trial court and supported by the record, defense counsel specifically warned defendant that the jailhouse calls could be used for impeachment. To limit the likelihood of impeachment, counsel advised defendant to restrict himself to short, "yes or no" answers and to not treat his testimony as a "battle" with the prosecutor. Yet, defendant again disregarded this advice and opened the door to impeachment by contradicting statements that he made during the jailhouse calls.[2] Although it was defendant who opened the door, defendant blames defense counsel for his poor performance during cross-examination, and defendant claims that defense counsel should have reviewed the jailhouse tapes and surveillance video with defendant. However, defendant personally made the telephone calls and would, thus, be familiar with the content of his calls; further, defendant saw the surveillance footage before trial at the preliminary hearing. The surveillance videos were also played during trial before defendant testified. In these circumstances, it was not objectively unreasonable for defense counsel not to again play the videos for defendant in jail. While the two did not review the recordings together in jail, evidence showed that defense counsel and defendant discussed strategy and reviewed defendant's potential testimony before trial. In addition, as noted, defense counsel gave defendant advice about how to answer questions, particularly on cross-examination. Overall, the record does not support defendant's contentions that defense counsel provided constitutionally ineffective assistance regarding defendant's decision to testify or counsel's efforts to prepare defendant to testify.

There is similarly no merit to defendant's contention that defense counsel provided ineffective assistance by failing to prepare a defense witness to testify in accordance with the video evidence. The witness in question, who was related to defendant by marriage, testified at trial that she was at the club and saw shots fired, not by defendant, but from a white Escalade. During cross-examination, the prosecutor showed the witness the surveillance videos, and the witness agreed that certain details in her testimony did not match the footage. Defendant now complains that, although the witness appeared to testify to the truth as she remembered it, her testimony did not coincide precisely with the video evidence, and defendant claims that defense counsel failed to adequately prepare the witness to testify in accordance with the video evidence.

However, as found by the trial court, defense counsel prepared the witness by speaking with her on the telephone a number of times and ascertaining what testimony she had to offer. At the *Ginther* hearing, defense counsel also reasonably—and ethically—explained that he saw no reason to show the videos to the witness because he was calling her for what she remembered,

---

[2] Even after defendant opened the door, defense counsel vigorously argued, albeit unsuccessfully, against the use of the jailhouse calls for impeachment purposes.

and he did not prepare witnesses to testify by telling them what to say. Certainly, defense counsel had no obligation to attempt to distort the witness's purportedly honest testimony or to encourage her to present false testimony. See *People v LaVearn*, 448 Mich 207, 216-218; 528 NW2d 721 (1995); see also MRPC 3.3(a)(3) ("A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false."). Accordingly, defendant cannot show that counsel performed below an objective level of reasonableness by failing to take unethical action such as coaching the witness to offer testimony that coincided with the videos rather than her personal recollections. See *People v Mitchell*, 454 Mich 145, 164; 560 NW2d 600 (1997) (recognizing that counsel is not required to "do what is impossible or unethical") (quotation marks and citation omitted).

Moreover, even if the videos should have been shown to the witness before trial as a means to simply refresh her recollections or prepare her for cross-examination, defendant has failed to establish a factual record that would support the assertion that showing the witness the videos beforehand would have refreshed her memory and altered her testimony in a manner beneficial to defendant; therefore, defendant has not shown prejudice from counsel's failure to show the videos to the witness before trial. Ultimately, the witness offered valuable testimony in support of the defense's theory that the shots were fired from the Escalade, and defendant has not overcome the presumption that the decision to call her as a witness was sound trial strategy, notwithstanding the inconsistencies between her recollections and the video. See *Putman*, 309 Mich App at 248.

Finally, defendant argues that defense counsel provided ineffective assistance by calling another defense witness, knowing that the witness would offer testimony inconsistent with his prior statements. The trial court concluded that defendant had not overcome the presumption that counsel's decision to call this witness was a matter of trial strategy, and we agree. As explained at the *Ginther* hearing, defense counsel knew that the witness told police that shots were fired from a white Escalade, but counsel also knew that the witness was "probably not going to testify according to his statements." Nevertheless, counsel decided to call the witness because counsel reasonably strategized that calling the witness, placing him under oath, and confronting him with his prior statements could lead the witness to testify truthfully and in accordance with the prior statements. See generally *Putman*, 309 Mich App at 245 (recognizing that the purpose of an oath is to "awaken the witnesses' consciences and impress the witnesses' minds with the duty to testify truthfully"). This strategy involved the risk that the witness would deny his previous statements, but this was a calculated risk that was not unsound under the circumstances. See *Odom*, 276 Mich App at 415. Counsel explained that, at the very least, he would be able to get the prior statements before the jury and impeach the witness with them. Had the witness testified in accordance with his statements to police, this would have been further evidence in support of the defense theory that the shots were fired from the Escalade. In comparison, the risk, and resulting prejudice to defendant, was relatively minimal because the witness did not implicate defendant; instead, the witness simply disavowed any knowledge of the shooting. In these circumstances, although counsel's strategy proved unsuccessful, see *Solloway*, 316 Mich App at 190, defendant has not overcome the presumption that counsel's decision to call the witness was a matter of trial strategy, and defendant has not shown that this decision to call the witness affected the outcome of the proceedings, see *Jackson*, 292 Mich App at 600-601. Defendant's claims of ineffective assistance of counsel are without merit.

## II. WITNESS INVOCATION OF PRIVILEGE

Next, defendant contends that the trial court abused its discretion by denying defendant's motion for a mistrial after a prosecution witness—the mother of defendant's children—stated, in front of the jury, that she wanted to "plead the Fifth." We disagree.

We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs "if the trial court chose an outcome that is outside the range of principled outcomes." *Id.* "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted). "The trial court may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information." *Id.* Further, when considering whether the prejudicial effect can be removed other than by a mistrial, we keep in mind that "instructions are presumed to cure most errors." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

The alleged irregularity at issue in the present case is a prosecution witness's attempt to plead the Fifth in lieu of testifying. Relevant to this issue, "[a] lawyer may not . . . call a witness knowing that he will claim a valid privilege not to testify." *People v Giacalone*, 399 Mich 642, 645; 250 NW2d 492 (1977). Indeed, even if the witness lacks a valid privilege, it is considered improper to call a witness knowing that the witness will insist on asserting an invalid privilege. *People v Gearns*, 457 Mich 170, 198-202; 577 NW2d 422 (1998) (opinion by BRICKLEY, J.), overruled in part on other grounds by *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999). "The rationale for this rule is the adverse inference that may be drawn against the defendant by the jury from the claim of testimonial privilege." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994). "[T]he validity of the asserted privilege is immaterial because the danger of the adverse inference is present regardless of the legitimacy of the assertion." *Id.* Calling a witness who intends to claim a privilege against testifying generally constitutes evidentiary error. *Giacalone*, 399 Mich at 645 n 6. However, constitutional error may potentially arise if the witness's invocation of a privilege denies a defendant the right to confront a witness, see *id.* and *Gearns*, 457 Mich at 186-187, or if due process is violated by a prosecutor's misconduct in making a " 'conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege,' " *Gearns*, 457 Mich at 188, quoting *Namet v United States*, 373 US 179, 186; 83 S Ct 1151; 10 L Ed 2d 278 (1963).

In this case, the trial court did not abuse its discretion by denying defendant's motion for a mistrial based on a witness's attempt to "plead the Fifth." To give rise to a claim of error, the prosecutor must *knowingly* call a witness who intends to claim a privilege against self-incrimination. *Gearns*, 457 Mich at 199; *Giacalone*, 399 Mich at 645. However, the trial court specifically concluded, after questioning the prosecutor and defense counsel, that the witness's attempt to plead the Fifth—when there was no reason for her to invoke her right against self-

incrimination[3]—was a "surprise" to everyone. Absent knowledge that the witness intended to claim a testimonial privilege, there was no error in the prosecutor's decision to call the witness.[4]

Moreover, the record plainly shows that the prosecutor made no attempt to build her case out of inferences arising from the witness's attempt to invoke a testimonial privilege. See *Gearns*, 457 Mich at 188. To the contrary, the witness's invalid attempt to claim a Fifth Amendment privilege was an isolated incident, promptly addressed by the trial court outside the jury's presence.[5] The prosecutor did not draw attention to the witness's statement and made no argument to the jury regarding the witness's attempted invocation of her rights. Indeed, when the jury returned to the courtroom, the trial court instructed the jury to disregard the witness's attempt to plead the Fifth, and the witness ultimately testified, answering all questions put to her by the prosecutor and defense counsel. The court, in its curative instruction, specifically explained that "[s]he doesn't have any Fifth Amendment right to remain silent. . . ." Given that the witness testified, and given the trial court's curative instruction, the jury was not left to draw adverse inferences from the witness's invalid invocation of the Fifth Amendment, see *Paasche*, 207 Mich App at 709, and defendant was fully able to cross-examine the witness, *Gearns*, 457 Mich at 187. On the whole, defendant's ability to receive a fair trial was not impaired, and thus the trial court did not abuse its discretion by denying defendant's motion for a mistrial. See *Lane*, 308 Mich App at 60.

### III. JURY BIAS FOLLOWING THE DISMISSAL OF ONE JUROR

Defendant next argues that the trial court should have declared a mistrial after one of the jurors expressed concerns relating to courtroom security. At defense counsel's request, the specific juror in question was dismissed. However, defendant did not move for a mistrial, and thus, defendant's claim that a mistrial should have been granted on the basis of jury partiality is

---

[3] The witness was not involved with the shooting, and she was not at the club on the night of the murder. Rather, the witness offered testimony that, on the night of the murder, defendant borrowed her car, which can be seen on the surveillance video from the nightclub.

[4] On appeal, defendant suggests that by calling the witness, the prosecutor somehow engaged in impermissible vouching. It is true that a "prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, defendant fails to explain how the prosecutor conveyed that she had some special knowledge concerning the witness's truthfulness simply because she called her testify. Defendant's vouching claim is without merit.

[5] The trial court promptly dismissed the jury, appointed independent counsel for the witness, and determined that the witness could not claim a Fifth Amendment privilege against testifying because she was not at risk of incriminating herself. The trial court then instructed the witness to truthfully answer the questions from the attorneys, and the witness agreed that she would do so.

unpreserved and reviewed for plain error.[6]  See *Jackson*, 292 Mich App at 592, and *People v Nash*, 244 Mich App 93, 96-97; 625 NW2d 87 (2000).  Defendant has not shown plain error.

"The trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict based on the evidence admitted in court."  *Jackson*, 292 Mich App at 592.  However, if a juror is dismissed during trial, it does not necessarily follow that the remaining jurors are tainted; rather, there must be a showing that "the remaining jurors had been exposed to improper influences or that their ability to render a fair and impartial verdict had been compromised."  *Id*. at 593; see also, generally, *People v Strand*, 213 Mich App 100, 103-104; 539 NW2d 739 (1995) ("A new trial will not be granted for [juror] misconduct unless it affects the impartiality of the jury.").  Indeed, jurors are presumed to be impartial, and the burden is on a defendant to show that jurors were not impartial "or at least that the [jurors'] impartiality is in reasonable doubt."  *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008).

In this case, on the morning of the fourth day of trial, one of the jurors approached a deputy and asked "if the defendant was going to be handcuffed during the verdict" because of concern that defendant would come after the jury in the jury box.  The trial court interviewed the juror in question outside the presence of the remaining jurors.  The juror explained that his concern was a "personal concern," he thought of this concern that morning, and he had not mentioned it to the other jurors.  At defense counsel's request, the juror was excused from the jury.  After the juror was dismissed, the other jurors were told that the dismissed juror had been excused because a "personal issue" "came up."

On this record, defendant has not shown plain error.  There is simply no evidence that the dismissed juror said or did anything to influence the remaining jurors or to affect their impartiality.  See *Jackson*, 292 Mich App at 593; see also *Miller*, 482 Mich at 554.  The trial court specifically questioned the dismissed juror regarding whether he had discussed his security concerns with the other jurors, and he stated that he had not.  In other words, as in *Jackson*, 292 Mich App at 593, "[t]he trial court's questioning of the dismissed juror did not reveal any information or circumstances to suggest that the remaining jurors had been exposed to improper influences or that their ability to render a fair and impartial verdict had been compromised."  *Id*.  Given the dismissed juror's assurances, the trial court had no obligation to question the remaining jurors about this issue.  See *id*.  Indeed, it is defendant's burden to show partiality, see *Miller*, 482 Mich at 550, but defendant did not ask for the other jurors to be questioned, and

---

[6] On appeal, defendant contends that this issue is preserved because he moved for a mistrial on this basis, but defendant provides no citation to the record to support this assertion, see MCR 7.212(C)(7), and we found no support for this contention in the record.  In contrast, the prosecutor asserts that defendant's waived his argument regarding the necessity of a mistrial because defense counsel requested the dismissal of the specific juror and the trial court *granted* this request.  However, defendant is arguing for further relief on appeal; i.e., he is arguing that the remaining jurors should not have decided the case because they may have been tainted by the dismissed juror.

defendant ultimately offered no evidence that the remaining jurors were tainted. While defendant speculates on appeal that the other jurors may have somehow been privy to the dismissed juror's concerns, such speculation is insufficient to establish jury bias or partiality, see *People v Sowders*, 164 Mich App 36, 48; 417 NW2d 78 (1987), and it does not demonstrate that plain error occurred. Consequently, defendant is not entitled to relief on appeal.[7]

## IV. POST-*MIRANDA*[8] SILENCE

Defendant next argues that the trial court abused its discretion by denying defendant's motion for a mistrial after the officer-in-charge for the case, Detective Jeb Rutledge, improperly implied that defendant invoked his right to remain silent when Detective Rutledge testified that defendant had been "arrested and interrogated." We disagree.

"As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person." *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009). "[A]ny reference to a defendant's post-arrest, post-*Miranda* silence" is generally prohibited as a violation of a defendant's due-process rights. *Id*. at 212-214. However, "in some circumstances a single reference to a defendant's silence may not amount to a violation . . . if the reference is so minimal that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference. . . .' " *Id*. at 214-215, quoting *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987). For example, in *Greer*, there was no "violation where the defense counsel immediately objected to a question by the prosecution about defendant's post-arrest, post-*Miranda* silence, and the trial court twice gave a curative instruction to the jury." *Shafier*, 483 Mich at 215, citing *Greer*, 483 US at 764-765. Similarly, the Michigan Supreme Court has concluded that no violation occurred in a case in which the improper testimony about post-*Miranda* silence constituted a "single

---

[7] We note that on appeal defendant relies heavily on *People v De Haven*, 321 Mich 327, 334; 32 NW2d 468 (1948), a sexual assault case wherein the Court concluded that the defendant was deprived of a right to a trial by an impartial jury when it was discovered that two of the jurors were dishonest during voir dire and withheld their familial relationship with a confessed rapist. On appeal, defendant claims that the present case is like *De Haven* because the dismissed juror had fears about serving on a jury that he failed to disclose during voir dire. This argument is without merit. Factually, the assertion that the dismissed juror withheld information during voir dire is unsupported; indeed, the juror stated that he thought of his security concerns on the morning of the fourth day of trial. In any event, "the crux of *DeHaven*'s holding was that a defendant has a constitutional right to an impartial jury and, because the jurors at issue in *DeHaven* lacked the capacity to act impartially, the defendant was entitled to a new trial." *Miller*, 482 Mich at 560. Here, the only juror who showed any potential partiality was the juror who expressed concerns that defendant might attack the jury, and he was promptly dismissed from the jury. As discussed, there is no evidence that the remaining jurors were biased or partial. See *id*. Thus, unlike in *De Haven*, this is not a case where a partial juror sat on the jury, and defendant has not shown that he was deprived of his right to a trial before an impartial jury.

[8] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

impropriety" that was "inadvertently elicited" by a prosecutor's open-ended question, the prosecutor did not call attention to the defendant's silence and made no argument regarding the defendant's silence, and the trial court gave a curative instruction. *People v Dennis*, 464 Mich 567, 577-578, 581-582; 628 NW2d 502 (2001).

Turning to the facts in this case, during direct examination by the prosecutor, Detective Rutledge described the police investigation into the shooting. In the course of this testimony, the following exchange took place:

> *[The prosecutor]*. Okay. Was there anything else that you did as officer-in-charge of the case after the suspect was arrested?
>
> *[Detective Rutledge]*. The defendant was arrested and interrogated.

After Detective Rutledge mentioned interrogation, defense counsel immediately objected. Out of the jury's presence, defense counsel stated that defendant had not been interrogated because he invoked his right to remain silent and in fact refused to leave his jail cell to be interviewed. In response to questions from the trial court, Detective Rutledge conceded that defendant "exercised his rights" and never made a statement. Detective Rutledge also agreed that he "misspoke" when he said that defendant had been interrogated. Defendant moved for a mistrial. Although the trial court denied the motion for a mistrial, at defense counsel's request, the trial court gave a curative instruction to the jury.

On these facts, there is no merit to defendant's contention that his post-arrest, post-*Miranda* silence was improperly placed before the jury. First, although Detective Rutledge testified that defendant was "arrested and interrogated," Detective Rutledge did not inform the jury that, after being read his *Miranda* rights, defendant invoked his right to remain silent, refused to leave his jail cell for an interview, and declined to make a statement. Defendant's appellate argument suggests that defendant's refusal to speak may somehow be inferred from Detective Rutledge's remark, but the statement that defendant was "interrogated" after his arrest does not communicate that defendant refused to speak with police, and this remark could more plausibly be taken to mean that defendant *did* submit to an interview. Quite simply, contrary to defendant's arguments, his post-arrest, post-*Miranda* silence was not introduced as evidence at trial, and thus there was no due process violation. See, generally, *Greer*, 483 US at 764-765 & n 5.

Moreover, even if we were to interpret Detective Rutledge's statement that defendant was "arrested and interrogated" as an improper allusion to defendant's post-arrest, post-*Miranda* silence, defendant would not be entitled to relief on the basis of this single reference. As in *Dennis*, Detective Rutledge's remark was isolated, and it was inadvertently elicited by the prosecutor's open-ended question about the investigation. See *Dennis*, 464 Mich at 575, 577-578. The prosecutor made no attempt to use defendant's silence at trial; that is, the prosecutor did not call attention to defendant's silence, the prosecutor asked no other questions eliciting responses about defendant's silence, and the prosecutor made no argument about defendant's silence. See *id*. at 577-578. Further, the trial court provided a curative instruction relating to Detective Rutledge's reference to "interrogation." Consistent with defense counsel's request, the trial court informed the jurors that Detective Rutledge misspoke, that there was no interrogation,

and that they "should disregard anything that the officer said about interrogating the defendant . . . ." Jurors are presumed to follow their instructions, *Lane*, 308 Mich App at 57, and there is no reason to believe that the jury was incapable of obeying the trial court's instruction in this case, see *Dennis*, 464 Mich at 581. Accordingly, any prejudice was cured by this instruction, and there was no due-process violation because defendant's post-arrest, post-*Miranda* silence " 'was not submitted to the jury as evidence from which it was allowed to draw any permissible inference. . . .' " *Dennis*, 464 Mich at 578, 581-582, quoting *Greer*, 483 US at 764-765. Because there was no due-process violation, it also follows that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. See *Dennis*, 464 Mich at 581-582. Accordingly, defendant is not entitled to relief on appeal.

## V. JURY SELECTION

Finally, in a Standard 4 brief, defendant contends that three of the jurors should have been dismissed for cause during jury selection because they were biased. Defendant's argument is unpreserved because he did not exhaust his peremptory challenges or refuse to express satisfaction with the empaneled jury. See *People v Tyburski*, 196 Mich App 576, 583 n 5; 494 NW2d 20 (1992), aff'd 445 Mich 606 (1994). Unpreserved claims relating to jury selection and juror bias are reviewed for plain error affecting a defendant's substantial rights. *Jackson*, 292 Mich App at 592; *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Defendant has not shown plain error.

"The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). Prospective jurors "may be excused for cause based on a demonstrated bias for or against a party, if the venireman shows a state of mind that will prevent the juror from rendering a just verdict, or if the venireman has opinions that would improperly influence the juror's verdict." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000); see also MCR 2.511(D). However, as a general rule, disqualification is not required when potential jurors agree to put aside biases or personal opinions and to render a verdict based on the evidence presented in court. See *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001) (opinion by O'CONNELL, J.); see also *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961), superseded by statute on other grounds as stated in *Moffat v Gilmore*, 113 F3d 698, 701 (CA 7, 1997). "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *Johnson*, 245 Mich App at 256 (opinion by O'CONNELL, J.); see also *Miller*, 482 Mich at 550.

In this case, defendant draws this Court's attention to three jurors. The first juror had a DUI arrest, she had relatives who had been charged with crimes, she had been the victim of a robbery, and she had friends and a cousin in law enforcement. The second juror had relatives charged with crimes and a sister who was robbed at gunpoint. Defendant claims that these facts demonstrate bias and warranted disqualification of these jurors for cause. However, notwithstanding these life experiences, both jurors stated during voir dire that they could be fair and impartial. Defendant failed to develop a record to show that these jurors were biased, and thus, he failed to overcome the presumption that they could be impartial. See *Miller*, 482 Mich at 550, 552-554; see also *Johnson*, 245 Mich App at 256 (opinion by O'CONNELL, J.). Accordingly, defendant has not shown plain error, and he is not entitled to a new trial.

The third juror stated during voir dire that she had a brother-in-law who was incarcerated for many years, and when asked if her brother-in-law's interactions with the criminal justice system would cause her to be "unfair to either side in this case," the juror answered "[y]es."[9] However, following this "yes," the trial court engaged the juror in additional discussion regarding her ability to judge the evidence. This additional questioning by the trial court made clear that the juror was able and willing to listen to testimony, assess witness credibility, and make a determination of guilt based on the evidence. Indeed, the juror later answered in the negative when asked if there were issues that would affect her ability to be "fair and impartial . . . ." Defendant did not object to the juror,[10] and he made no effort to develop a record to demonstrate the juror's partiality. Ultimately, the trial court elicited sufficient information to determine whether the juror could be impartial. See *Tyburski*, 445 Mich at 620. Defendant has not shown plain error on this record. See *Miller*, 482 Mich at 550, 552-554.

Although not contained in his statement of the questions presented, see MCR 7.212(C)(5), defendant also asserts that defense counsel provided ineffective assistance of counsel by failing to challenge the three jurors in question. This argument is without merit. Jury selection is presumed to be a matter of trial strategy, often involving defense counsel's observations of facial expressions, body language, and manner of answering questions. *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). On the record presented, defendant has not shown that any of the jurors were biased, and there is no basis for concluding that defense counsel—an attorney with more than 30 years of experience handling "thousands" of criminal cases—did not exercise sound professional judgment to select a jury that he believed to be "reasonable, fair, and honest . . . ." See *id*. The record simply does not support defendant's claim that counsel was ineffective based on his failure to challenge the jurors in question.

Affirmed.


/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[9] The juror did not state that she would favor a particular side at trial. Instead, the juror's statements during voir dire suggested that her brother-in-law's repeated lies had made her more skeptical in general of the stories people tell.

[10] Counsel specifically stated that he "pass[ed] for cause," and he did not exercise a peremptory challenge to remove the juror despite having peremptory challenges available.